# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>　　*Plaintiff*<br><br>v.<br><br>WILLIAM ANDREW STACK,<br>　　*Defendant* | §<br>§<br>§<br>§　　CASE NO. 1:21-CV-00051-LY<br>§<br>§<br>§<br>§ |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL
　　UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant's Motion to Dismiss, filed May 7, 2021 (Dkt. 18); Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, filed May 28, 2021 (Dkt. 23); and Defendant's Reply in Support of the Motion to Dismiss, filed June 11, 2021 (Dkt. 27). On June 17, 2021, the District Court referred Defendant's Motion and the related filings to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 28.

### I.　General Background

The Securities and Exchange Commission ("SEC") brings this civil enforcement action against William Andrew Stack, alleging violations of the antifraud and registration provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934. According to the Complaint, from April 2016 through September 2016 (the "Relevant Period"), Stack was the Chief Executive Officer, President, Treasurer, Secretary, and Director of Preston Corp. a/k/a Preston Royalty Corporation ("Preston"), a Nevada corporation purporting to specialize in financing gold mining

operations in the United States. Complaint, Dkt. 1 ¶ 1. The SEC alleges that Preston was a shell entity "that never conducted any royalty financing operations and never generated any revenues." Dkt. 23 at 9. The SEC further alleges that William S. Marshall, a recidivist securities law violator, was Preston's undisclosed control person.[1] According to the Complaint, Stack, an attorney with no mining business experience, agreed to serve as Preston's CEO because, in his words, he was broke and needed a job.[2]

During the Relevant Period, the SEC alleges that Preston, through Stack, raised more than $330,000 in an unregistered offering of Preston stock (the "Offering"). The SEC further alleges that Preston, through Stack, defrauded investors by knowingly making and disseminating materially false and misleading statements in its private placement memorandum ("PPM") and Preston Royalty Business Plan ("Business Plan") used to solicit investments in the Offering. The SEC contends that Stack, as Preston's only officer and director, was a critical participant in the Offering. Specifically, the SEC alleges that Stack:

- was the only officer identified to investors who could run the company legally;
- opened the bank accounts to which investors were directed to send their money;
- hired the newswire services used to issue the company's false and misleading press releases to create interest in the Offering;
- reviewed and approved the PPM, the company's primary offering document, which the company's unregistered sales agents sent to prospective investors to solicit investment;
- knew or recklessly disregarded that the PPM omitted Marshall's control of Preston;
- failed to disclose that Stack had no experience in the mining industry;

---

[1] The SEC filed a separate enforcement action in the District of Nevada against Marshall; his purported gold mining company, Westport Energy L.L.C.; and Intertech Solutions, Inc., his finance and management company for the alleged gold mining operations. *Sec. & Exch. Comm'n v. Intertech Solutions, Inc.*, 2:18-CV-1566-APG (D. Nev. Aug. 20, 2018). On August 28, 2028, Marshall and his companies agreed to a Stipulated Consent Judgment. *Id.* at Dkt. 3.

[2] The SEC points out that Stack has filed for bankruptcy protection at least five times. Dkt. 1 ¶ 28.

- misleadingly claimed that the company had "an experienced management team with a strong track record of success";
- falsely claimed to own and grow "a large diversified portfolio of royalties and streams," Dkt. 1 ¶¶ 68-69, 74;
- approved the countersigned subscription agreements contractually obligating the company to issue its stock to investors;
- signed an "issuance resolution" on behalf of Preston directing the company's transfer agent to issue a stock certificate to an investor; and
- as the sole signatory on Preston's bank accounts, misappropriated more than $75,000 of investor monies and wired more than $225,000 to Marshall.

The SEC further alleges that Stack reviewed, revised, approved, and issued the false and misleading press releases Preston used to generate investor interest in the company's stock. Specifically, the SEC contends that Stack approved and issued four press releases omitting any mention of Marshall; omitting that the company's ability to operate was contingent on a $5 million bond offering that never occurred; misrepresenting the existence and nature of purported contracts with third parties; and misrepresenting the company's ability to commit $250,000 to a purported project when it had only $100 in the bank and no foreseeable means of raising capital.

The SEC contends that Stack benefited from the fraud by misappropriating more than $75,000 of investor money for personal expenses and transferring more than $225,000 to Marshall. Stack did so despite knowing that the offering documents given to investors to solicit their investments expressly stated that every dollar raised in the private placement would be used to acquire gold mines, the SEC alleges. Ultimately, the $5 million bond offering never occurred, and Preston never acquired any royalty streams.

On September 2, 2016, the SEC suspended trading in Preston's securities for ten business days because of questions regarding the adequacy and accuracy of available information about Preston in the marketplace. Shortly thereafter, Preston ceased operations.

3

On January 15, 2021, the SEC filed this civil enforcement action against Stack, alleging violations of (1) Section 17(a) of the Securities Act (Claim I); (2) Section 10(b) and Rule 10b-5 of the Exchange Act (Claim II); (3) Section 5 of the Securities Act (Claim III); and (4) aiding and abetting violations of these provisions (Claims IV-VI). The SEC seeks disgorgement, civil penalties, a penny-stock bar, an officer and director bar, and to permanently enjoin Stack from violating the charged provisions or providing legal services to anyone in connection with a securities offering pursuant to an exemption from the securities laws' registration requirements. Stack seek dismissal of the Complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## II.   Legal Standards

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

4

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Because the SEC alleges securities fraud, the Complaint also must satisfy Federal Rule of Civil Procedure 9(b), which requires that a plaintiff "state with particularity the circumstances constituting fraud or mistake." The particularity demanded by Rule 9(b) necessarily differs with the facts of each case. *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067-68 (5th Cir. 1994). Generally, under Rule 9(b), "a plaintiff must identify the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Mun. Employees' Ret. Sys. of Michigan v. Pier 1 Imports, Inc.,* 935 F.3d 424, 429 (5th Cir. 2019) (cleaned up). Importantly, "the second sentence of Rule 9(b) relaxes the particularity requirement for conditions of the mind, such as scienter: 'Malice, intent, knowledge, and other condition of mind of a person may be averred generally.'" *Tuchman*, 14 F.3d at 1068 (quoting FED. R. CIV. P. 9(b)). "Although scienter may be 'averred generally,' case law amply demonstrates that pleading scienter requires more than a simple allegation that a defendant had fraudulent intent. To plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud." *Id.*

### III.   Analysis

Stack argues that the SEC's claims under Section 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act fail to allege scienter or knowledge of any securities law violation or fraudulent scheme. Stack also argues that, in its claims under Section 17(a), the SEC fails to allege that he acted negligently. In addition, Stack contends that the SEC fails to allege in its claims under Sections 5(a) and 5(c) of the Securities Act that he had any knowledge of or

5

material involvement in the sale of unregistered securities without an exemption. Finally, Stack moves to dismiss all of the secondary aiding and abetting claims for failure to allege plausible primary claims.

**A. Scienter**

The SEC alleges that Stack "directly or indirectly, singly on in concert" violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. Dkt. 1 ¶ 116. Stack argues that the SEC has not alleged sufficient facts to show that he acted with scienter or knowledge of any securities law violation or fraudulent scheme.

Section 10(b) of the Exchange Act makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Under the power granted by this statute, the SEC created Rule 10b-5, which makes it unlawful for any person, directly or indirectly:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person

17 C.F.R. § 240.10b-5.

To prove a violation of Rule 10b-5[3] for material representations or misleading omissions, the SEC must establish three elements: "(1) material misrepresentations or materially misleading

---

[3] The scope of liability under Section 10(b) and Rule 10b-5 is the same. *See Sec. & Exch. Comm'n v. Zandford*, 535 U.S. 813, 816 n.1 (2002).

omissions, (2) in connection with the purchase or sale of securities, (3) made with scienter." *Sec. & Exch. Comm'n v. Sethi*, 910 F.3d 198, 206 (5th Cir. 2018), *cert. denied*, 140 S. Ct. 95 (2019). To prove a violation in the offer or sale of securities under Section 17(a) of the Securities Act, the SEC must establish the same elements for material misrepresentations and omissions under Section 10(b) and Rule 10b-5. *Sec. & Exch. Comm'n v. Spence & Green Chem. Co.,* 612 F.2d 896, 903 (5th Cir. 1980). Like Section 10(b) and Rule 10b-5, Section 17(a)(1) violations must be supported by allegations of scienter or intent to defraud, while Sections 17(a)(2) and 17(a)(3) require only negligence. *Sethi*, 910 F.3d at 206.

Here, the parties dispute whether the SEC has alleged sufficient facts to show that Stack acted with scienter. Scienter requires "an intent to deceive, manipulate, or defraud or that severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009). Thus, "[t]o prove scienter, the SEC need only prove that the defendant acted with severe recklessness." *Sethi*, 910 F.3d at 206. Severe recklessness is defined as

> those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Id.*

To plead scienter adequately in the securities law context, "Rule 9(b) requires the SEC to set forth specific facts in the complaint that support an inference of fraud." *Sec. & Exch. Comm'n v. Blackburn*, 156 F. Supp. 3d 778, 790 (E.D. La. 2015) ("*Blackburn I*") (quoting *Tuchman*, 14 F.3d at 1068). "Alleged facts are sufficient to support such an inference if they either (1) show a

defendant's motive to commit securities fraud or (2) identify circumstances that indicate conscious behavior on the part of the defendant." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008).

The SEC alleges that Stack reviewed the PPM and Business Plan before they were sent to investors and approved on Preston's behalf the subscription agreement, which was attached to the PPM. Dkt. 1 ¶¶ 50, 54, 64. The SEC alleges that the PPM and Business Plan given to investors included the following false and misleading statements:

- "*[a]ll funds* will be allocated towards the acquisition of permitted and operating alluvial gold mines or properties considered to be in near term production," *id.* ¶ 52;
- all funds will be kept in Preston's bank account until the earlier of the Offering's closing, the rejection of the subscription, or the termination of the Offering, *id.* ¶ 53;
- Stack was the company's founder, *id.* ¶ 55;
- failure to disclose that Stack—the company's sole officer and director—had no experience in the mining industry, *id.* ¶ 68;
- the company "has an experienced management team with a strong record of success," *id.* ¶ 69;
- Preston "*owns* and grows a large diversified portfolio of royalties and streams," *id.* ¶ 74;
- did not disclose that the company's business plan depended on the success of a $5 million bond issuance that never occurred, *id.* ¶ 75; and
- did not disclose Marshall's role as Preston's undisclosed control person, *id.* ¶ 67.

The Court finds that these allegations are sufficient to state a plausible claim that Stack knew or recklessly disregarded that the documents given to investors included false and misleading statements and omissions. *See Sec. & Exch. Comm'n v. Blackburn*, --- F.4th ----, No. 20-30464, 2021 WL 4737431, at *3 (5th Cir. Oct. 12, 2021) (holding that defendant's failure to disclose founder and control person's role in company to investors "was—at the very least—severely reckless, such that the danger of misleading investors about [the company's] leadership was so obvious that [the defendant] must have been aware of it." (internal quotation marks omitted); *Sethi*,

910 F.3d at 207 (finding that allegations established scienter where defendant knew he did not have relationships with several major oil companies but repeatedly represented to investors in PPM that he did); *Sec. & Exch. Comm'n v. Montgomery*, No. CV SA-20-CA-598-FB, 2021 WL 210749, at *4 (W.D. Tex. Jan. 20, 2021) (finding that defendant acted with scienter under Section 17(a), Section 10(b), and Rule 10b-5(b) where he had ultimate authority over PPM and marketing materials falsely representing officers' credentials, expertise, and success, which defendant knew or was severely reckless in not knowing the officers did not possess, and where defendant failed to verify that information sent to investors was accurate); *Sec. & Exch. Comm'n v. Sneed*, No. 3:20-CV-2988-S-BH, 2021 WL 4202171, at *9 (N.D. Tex. Sept. 10, 2021) (finding that defendant acted with scienter where SEC alleged he misrepresented his background to clients, misrepresented and omitted facts about the company, hid his identity from the public, failed to verify the accuracy of his representations, and had no reasonable basis for making them), *R. & R. adopted*, 2021 WL 4408425 (N.D. Tex. Sept. 27, 2021); *Blackburn I*, 156 F. Supp. 3d at 793 (denying motion to dismiss for failing to allege scienter where complaint alleged that defendant failed to disclose control person's role in the company to investors); *Sec. & Exch. Comm'n v. Enterprises Sols., Inc.*, 142 F. Supp. 2d 561, 574 (S.D.N.Y. 2001) (holding that corporate officer acted with scienter by knowingly and intentionally concealing a consultant's management role and equity interest in company where consultant had history of criminal and regulatory violations).

The SEC further alleges in the Complaint that Stack reviewed, revised, approved, and issued four press releases containing the following false and misleading statements, Dkt. 1 ¶¶ 78-80:

- Each press release omitted any mention of Marshall's role in the company and gave readers the false impression that Stack was controlling Preston. *Id.* ¶ 82;
- Each press release omitted that Preston needed to close a $5 million corporate bond issuance before it could acquire a royalty interest in any mining operation, rendering Preston's statements concerning its various royalty agreements misleading. *Id.* ¶ 83;

9

- The April 25, 2016 press release claimed that Preston had entered into a "royalty agreement" with a third party when it had only entered into a "finder's fee" agreement with the third party. *Id.* ¶¶ 85-88;

- The May 3, 2016 press release claimed that Preston (1) had executed a gold mine agreement on its first royalty acquisition when, in fact, it had not executed any such agreement, and (2) would fund at least $250,000 on the project when, on that day, it had only $100 in its bank account. *Id.* ¶¶ 89-93;

- The August 10, 2016 press release claimed that (1) the West Port Gold Mine was "fully permitted" for a gold project and was in the "final stages of construction" when neither was true, and (2) an environmental assessment for the mine had been submitted to a regulator but had not yet been approved by that regulator. *Id.* ¶¶ 94-98; and

- The September 1, 2016 press release purported to "clarif[y]" misstatements in the August 10th press release but failed to do so because the regulator's environmental assessment had not yet been finalized. *Id.* ¶¶ 99-102.

The Court finds that these allegations are sufficient to state a plausible claim that Stack knew or recklessly disregarded that the press releases contained false and misleading statements and omissions. *See Pier 1 Imports, Inc.*, 935 F.3d at 430 ("Plaintiffs properly plead scienter when they allege that a company knowingly or recklessly made statements to the market while aware of facts that, if not disclosed, would render those statements misleading."); *Sec. & Exch. Comm'n v. Blackburn*, No. CV 15-2451, 2020 WL 1166995, at *4 (E.D. La. Mar. 11, 2020) (finding that officer's misrepresentation in press release that company had struck oil was made with scienter where officer knew or was severely reckless with the fact that company had not struck oil), *aff'd*, 2021 WL 4737431 (5th Cir. Oct. 12, 2021); *Sec. & Exch. Comm'n. v. Strauss*, No. 2:08CV-0206-WAP-DAS, 2011 WL 1158783, at *6 (N.D. Miss. Mar. 28, 2011) (finding that defendant acted with requisite scienter where he knowingly and or recklessly disseminated false and misleading information to investors and potential investors in six press releases creating erroneous impression that company had merged with another company, the merged companies had significant assets, and they were on the verge of beginning a large bio-fuel production venture).

The Court further finds that the SEC has adequately alleged that Stack knew or was severely reckless in not knowing that he was misappropriating investor monies, in contravention of the PPM's statement that the proceeds of the Offering would be used for investing in gold mines and the operations of the company. The SEC alleges in the Complaint that from July to November 2016, Stack withdrew investor funds from Preston's bank account to pay for personal expenses, such as clothing, electronics, and movie tickets. Dkt. 1 ¶¶ 109, 110.

The SEC further alleges in the Complaint that Stack had a motive to commit securities fraud: he was broke and needed money desperately. The Complaint quotes an email that Stack sent Marshall on August 8, 2016, to complain that unless he was paid more, he would no longer take on the legal risks of acting as Preston's CEO. *Id.* ¶ 103. After sending this email, Stack spoke by phone to Marshall, who convinced Stack to continue acting as Preston's CEO by promising him that funds were "about to come in." *Id.* ¶ 104. Accordingly, the SEC alleges a motive for the securities fraud. *See Dorsey*, 540 F.3d at 339 (noting that alleged facts are sufficient to support an inference of fraud where they show defendant's motive to commit securities fraud).

While Stack attempts to argue that the SEC's allegations "show at most that Mr. Stack played a *de minimis* role in the press releases"[4] and PPM, the Court finds that the above allegations satisfy the SEC's burden to plead scienter at this stage of the case. Accordingly, the undersigned recommends that the SEC's claims under Section 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act should not be dismissed for failure to allege scienter.

**B. Negligence**

Next, Stack argues that the SEC's claims under Section 17(a)(2) and (a)(3) fail because the SEC has not shown that he acted negligently. Because the burden to prove negligence is lesser

---

[4] Dkt. 18 at 11.

11

than the burden to establish scienter, the allegations in the Complaint concerning Stack's scienter also state a claim for negligence under Section 17(a)(2) and (a)(3). *See Sethi*, 910 F.3d at 206 ("To show that a defendant has violated § 17(a)(2) or (a)(3), the SEC must show the same elements as for Rule 10b-5, except that it need only prove 'the defendant acted with negligence.'"); *Sneed*, 2021 WL 4202171, at *9 (noting that a showing of scienter also meets the lesser burden of negligence for Sections 17(a)(2) and (a)(3)).

### C. Aiding and Abetting

The SEC alleges that Stack aided and abetted Preston in violating Sections 17(a) and 10(b) and Rule 10b-5. Section 20(e) of the Exchange Act permits the SEC to bring an action against "any person that knowingly or recklessly provides substantial assistance" to a primary violator of the securities laws. 15 U.S.C. § 78t(e). To prove a violation of this section, the SEC must show: (1) a primary violation of the securities laws; (2) that the aider and abettor had knowledge of this violation and of his or her role in furthering it; and (3) that the aider and abettor knowingly or recklessly provided substantial assistance in the commission of the primary violation. *Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*, 854 F.3d 765, 778 (5th Cir. 2017).

Stack argues that the SEC has not alleged sufficient facts to prove elements two and three, for the same reason he argued that the primary claims fail: "the SEC has failed to allege that Mr. Stack was aware of any securities law violation or fraudulent scheme. As such, he could not possibly have '***knowingly*** rendered substantial assistance in furtherance' of the same." Dkt. 18 at 21.

An aider and abettor need have only a "general awareness that one's role was part of an overall activity that is improper." *Sec. & Exch. Comm'n v. Felton*, No. 3:20-CV-0822-G, 2021 WL 2376722, at *12 (N.D. Tex. June 10, 2021) (quoting *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 94-95 (5th Cir. 1975)). To satisfy the "substantial assistance" component of the test, the SEC must demonstrate that the defendant "in some sort associated himself with the venture, that he

12

participated in it as something that he wished to bring about, and that he sought by his action to make it succeed." *Id.* (quoting *Sec. & Exch. Comm'n v. Apuzzo*, 689 F.3d 204, 206 (2d Cir. 2012)).

As discussed in detail above, the SEC has alleged facts sufficient to show that Stack was aware of, or at least recklessly disregarded, securities law violations. As noted, Stack was the CEO, President, Treasurer, Secretary, Director, and only named officer of Preston. The SEC alleges that Stack was the individual who controlled Preston's bank accounts; reviewed the false and misleading press releases, PPM, and Business Plan; and misappropriated investor funds for his himself and Marshall. The SEC alleges that on August 8, 2016, Stack emailed Marshall to complain that unless he was paid more money, he would no longer take on the legal risks of acting as Preston's CEO. Stack wrote, in part:

> There are extremely high risks sitting in the CEO chair. I have two former clients sitting in prison right now as proof of that fact. I agreed to accept the risks associated with being CEO partly because of the agreed upon compensation. . . . You have told me that you're bringing in $50,000+ per week for months. I'm not sure where that money has gone, or if it in fact has really come in. I only know what I'm told . . . .
>
> * * *
>
> I am CEO of Preston and I have no idea what is ever being done. [Individual-2] says that everything is "done" and that things are "starting" . . . . But it's always next week. . . . You guys put me in as CEO to stand as a buffer between you and the market. I get that. I agreed to stand there, accepting the risks inherent in the job. And now I've got a [state securities regulator's] inquiry with my name (not yours, not [Individual-2's], not [a sales agent's], no one else's) name right there in the crosshairs.

*Id.* ¶ 103.

The Court finds that these allegations are sufficient at this stage of the case to support the SEC's claim that Stack knowingly or recklessly provided substantial assistance in the commission of the primary violation. *Life Partners Holdings, Inc.*, 854 F.3d at 778.

13

### D.  Primary and Secondary Violations of Section 5

Finally, the SEC alleges that Stack, directly or indirectly, singly or in concert, violated Sections 5(a) and 5(c) of the Securities Act and aided and abetted Preston in violating these sections. Section 5 of the Securities Act, 15 U.S.C. § 77e, requires that a detailed registration statement be filed with the SEC before the offer or sale of securities to the public through interstate commerce, unless an exception applies. Section 5(a) makes it unlawful for any person to use any means or instruments of interstate commerce or of the mails to sell a security for which a registration is not in effect. 15 U.S.C. § 77e(a). Section 5(c) makes it unlawful to offer for sale a security for which a registration statement has not been filed with the Commission. *Id.* at § 77e(c).

"To establish a *prima facie* case for a violation of Sections 5(a) and 5(c), a plaintiff needs to prove that: (1) defendant, directly or indirectly, offered or sold securities; (2) no registration statement was in effect or filed with the Commission for the offer or sale of those securities; and (3) interstate transportation or communication, or the mails, were used in connection with the offer and sale." *Sec. & Exch. Comm'n v. Montgomery*, No. CV SA-20-CA-598-FB, 2021 WL 210749, at *5 (W.D. Tex. Jan. 20, 2021) (citing *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901-02 (5th Cir. 1980)). "Scienter is not an element of a Section 5 violation." *Montgomery*, 2021 WL 210749, at *5. Thus, Section 5 "imposes strict liability on offerors and sellers of unregistered securities . . . regardless of . . . any degree of fault, negligent or intentional, on the seller's part." *Swenson v. Engelstad*, 626 F.2d 421, 424 (5th Cir. 1980). Once a *prima facie* case has been made, the burden shifts to the defendant to show that a registration exemption was available. *United States Sec. & Exch. Comm'n v. Kahlon*, 873 F.3d 500, 504 (5th Cir. 2017).

Stack does not dispute the second and third elements of the *prima facie* case, but argues that the SEC has not demonstrated the first element because it has failed to show that Stack was a necessary participant and substantial factor in the sale of unregistered securities. Stack argues that

14

"[t]he Complaint does not contain allegations demonstrating or inferring that Mr. Stack had any knowledge or material involvement in the sale of unregistered securities without an exemption." Dkt. 18 at 23. But "Section 5 is a strict-liability statute; therefore, a defendant's intent is irrelevant." *Sec. & Exch. Comm'n v. Carter*, No. 4:19-CV-100-SDJ, 2020 WL 6304889, at *3 (E.D. Tex. Oct. 28, 2020), *R. & R. adopted*, 2020 WL 6304889 (E. D. Tex. Oct 28, 2020). Thus, Stack's knowledge of whether the securities were unregistered is irrelevant.

Section 5, furthermore, is not limited to the person or entity that ultimately passes title to the security. *Sec. & Exch. Comm'n v. Murphy*, 626 F.2d 633, 649 (9th Cir. 1980). "Instead, courts have established the concept of 'participant' liability to bring within the confines of § 5 persons other than sellers who are responsible for the distribution of unregistered securities." *Id.* "A defendant may be liable as a participant in a Section 5 violation if the defendant's role in the transaction is significant." *Blackburn I*, 156 F. Supp. 3d at 797 (citing *Murphy*, 626 F.2d at 648). "A defendant plays a significant role when he is both a 'necessary participant' and 'substantial factor' in the sales transaction." *Id.* (citing *Murphy*, 626 F.2d at 652). A defendant is a necessary participant if "but for" his participation in the distribution of unregistered securities, the sale transaction would not have taken place. *Sec. & Exch. Comm'n v. Blackburn*, No. CV 15-2451, 2020 WL 565551, at *4 (E.D. La. Feb. 5, 2020) ("*Blackburn II*"). A defendant is a substantial factor in the distribution of unregistered securities if his overall conduct and participation is not "de minimis." *Id.* (quoting *Sec. & Exch. Comm'n v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1257 (9th Cir. 2013)). Whether a defendant is a substantial factor in the distribution is a question of fact that requires a case-by-case analysis of the nature of the securities scheme and the defendant's participation in it. *Id.*

Here, the SEC alleges that Stack was a necessary participant and substantial factor in offering and selling the unregistered securities because Stack (1) was Preston's sole officer and director during the Offering; (2) reviewed and approved the PPM and subscription agreements; and (3) signed and issued the Board Resolutions authorizing the unregistered issuance of shares to the investors in the Offering. Dkt. 1 ¶¶ 38, 50, 63-66. The Court finds these allegations are sufficient to show that "but for" Stack's participation in the distribution of unregistered securities, the sale would not have taken place. *Blackburn II*, 2020 WL 565551, at *4. Accordingly, the SEC has alleged a *prima facie* case under Section 5 of the Securities Act.

Having found that Stack was a necessary participant and substantial factor in the distribution of unregistered shares, the burden now shifts to Stack to show that an exemption applied to the Offering. *Kahlon*, 873 F.3d at 504. "Exemptions are narrowly construed against the claimant." *Blackburn II*, 2020 WL 565551, at *4.

Stack alleges that the Offering was exempt from registration because "[c]onsistent with the PPM's plain terms, and Mr. Stack's review of the PPM, Mr. Stack knew that the private offering was exempt from registration under Regulation D and Rule 506." Dkt. 18 at 23.[5] Whether Stack thought an exemption applied does not mean that an exemption in fact did apply. "Scienter is not an element of a Section 5 violation and ignorance of the registration requirement is not a proper Section 5 defense." *Sec. & Exch. Comm'n v. Empire Dev. Grp., LLC*, No. 07 CIV. 3896 (PKC), 2008 WL 2276629, at *7 (S.D.N.Y. May 30, 2008). Stack has identified no facts showing that

---

[5] Rule 506 of Regulation D, 17 C.F.R. § 230.506, exempts an issuer who offers and sells restricted securities without general solicitation to a limited number of investors, as long as those investors are sophisticated enough to understand the merits and risks of the offering, and certain information is furnished to the investors. *Sec. & Exch. Comm'n v. Rose*, No. CV H-04-2799, 2007 WL 9826042, at *20 (S.D. Tex. Sept. 5, 2007). Regulation D, 17 C.F.R. § 230.501(h), allows the investors to use a "purchaser representative," as long as he or she "is not an affiliate, director, officer, or other employee of the issuer, or beneficial owner of 10 percent or more of any class of the equity securities or 10 percent or more of the equity interest in the issuer." *Id.*

Regulation D and Rule 506 applied in this case. Accordingly, Stack has failed to sustain his burden to show that an exemption applied, and his Motion to Dismiss the SEC's Section 5 claims should be denied.

The Court also finds that the SEC has alleged sufficient facts at this stage of the case to show that Stack aided and abetted Preston in violating Section 5 of the Securities Act. To state a claim for aiding and abetting, the SEC must allege facts that, if true, establish that (1) the primary party committed a securities violation; (2) the aider and abettor had "general awareness" of its role in the violation; and (3) the aider and abettor knowingly rendered "substantial assistance" in furtherance of it. *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 621 (5th Cir. 1993).

Stack argues that the SEC has failed to demonstrate that he was aware of any purported plans for a general solicitation of Preston securities. The Court disagrees. As discussed above, the SEC clearly alleges in the Complaint alleges that Stack was a securities lawyer who represented individuals and entities in the penny-stock market; that he knew or was severely reckless in not knowing that he was approving the signed subscription agreements on Preston's behalf; and that he knew or was reckless in not knowing that his issuance of the Board Resolutions to Preston's transfer agent was a but-for cause of the transfer agent's issuance of Preston stock to investors. Such allegations have been found to state a claim for aiding and abetting an issuer's Section 5 violation. *See Sec. & Exch. Comm'n v. Blackburn*, No. CV 15-2451, 2015 WL 10911439, at *5 (E.D. La. Sept. 11, 2015). Accordingly, the SEC has alleged sufficient facts to state a claim against Stack for aiding and abetting Preston's violations of Section 5.

## IV.   Recommendation

The undersigned **RECOMMENDS** that the District Court **DENY** Defendant's Motion to Dismiss (Dkt. 18). **IT IS FURTHER ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Lee Yeakel.

## V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on October 13, 2021.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE