# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** *Plaintiff* | § § § § | |
| **v.** | § | **CASE NO. 1:21-CV-00051-LY** |
| **WILLIAM ANDREW STACK, ESQ.,** *Defendant* | § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Plaintiff's Motion for Financial Relief and Injunction Bars and Memorandum of Law in Support, filed October 7, 2022 (Dkt. 48); Defendant's Motion for Leave to File Supplemental Exhibit in Support of Opposition to Plaintiff's Motion for Financial Relief and Injunction Bars, filed November 22, 2022 (Dkt. 59); Defendant's Motion to File Exhibit Under Seal, filed November 22, 2022 (Dkt. 60); and the parties' response and reply briefs. On November 15, 2022, the District Court referred the motions and related filings to this Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 57.

## I.   General Background

The Securities and Exchange Commission ("SEC") brings this civil enforcement action against William Andrew Stack under the antifraud and registration provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934.

### A. SEC Complaint

Stack, a 53-year-old resident of Spicewood, Texas, is a licensed securities law attorney who has represented individuals and entities in the over-the-counter penny stock market.[1] Complaint, Dkt. 1 ¶¶ 14, 25, 27. Stack has filed for bankruptcy protection at least five times. *Id.* ¶ 28.

From April 2016 through September 2016 ("Relevant Period"), Stack served as the Chief Executive Officer, President, Treasurer, Secretary, and Director of Preston Corporation, a penny stock issuer that purported to specialize in royalty financing for gold mining operations. *Id.* ¶ 1. The SEC alleges that Stack, who has no gold mining business experience, agreed to serve in these positions because Preston's undisclosed control person, William S. Marshall, a resident of Calgary, Canada and Cabo San Lucas, Mexico, "promised to pay Stack handsomely to do so," and Stack "was broke and needed a job." *Id.* ¶¶ 2, 31. The SEC alleges that Marshall is a recidivist securities law violator who has never been registered with the SEC in any capacity. *Id.* ¶ 15.

During the Relevant Period, the SEC alleges that Preston, through Stack, raised over $330,000 from more than fifty-five investors in an unregistered private placement of Preston common stock. *Id.* ¶ 3. The SEC alleges that the private placement was illegal because Preston did not register the securities offering with the SEC, and no exemption from the securities laws' registration requirements applied. *Id.* The SEC further alleges that Preston, through Stack, defrauded investors in the private placement by knowingly making and disseminating materially false and misleading statements in its private placement memorandum ("PPM") and Preston Royalty Business Plan ("Business Plan") used to solicit investments in the securities offering. *Id.* ¶¶ 4, 48.

---

[1] Stack is licensed to practice law in Oklahoma. Dkt. 1 ¶ 25. His law license has previously been suspended for failure to pay dues and noncompliance with continuing legal education requirements. *Id.* ¶ 26.

The SEC contends that Stack, as Preston's only officer and director, was a critical participant in the offering. The SEC alleges that Stack:

- was the only officer identified to investors who could run the company legally;
- opened the bank accounts to which investors were directed to send their money;
- hired the newswire services used to issue the company's false and misleading press releases to create interest in the offering;
- reviewed and approved the PPM, the company's primary offering document, which the company's unregistered sales agents sent to prospective investors to solicit investment;
- knew or recklessly disregarded that the PPM omitted Marshall's control of Preston;
- failed to disclose that Stack had no experience in the mining industry;
- misleadingly claimed that the company had "an experienced management team with a strong track record of success";
- falsely claimed to own and grow "a large diversified portfolio of royalties and streams";
- approved the countersigned subscription agreements contractually obligating the company to issue its stock to investors;
- signed an "issuance resolution" on behalf of Preston directing the company's transfer agent to issue a stock certificate to an investor; and
- was the sole signatory on Preston's bank accounts.

*Id.* ¶¶ 41-76.

The SEC further alleges that Stack reviewed, revised, approved, and issued the false and misleading press releases Preston used to generate investor interest in the company's stock. *Id.* ¶ 77. The SEC contends that Stack approved and issued four press releases omitting any mention of Marshall and that the company's ability to operate hinged on a $5 million bond offering that never occurred; misrepresenting the existence and nature of purported contracts with third parties; and misrepresenting the company's ability to commit $250,000 to a purported project when it had only $100 in the bank and no foreseeable means of raising capital. *Id.* ¶¶ 85-102.

The SEC contends that Stack benefited from the fraud by misappropriating more than $75,000 of investor money for personal expenses and transferring more than $225,000 to

Marshall. *Id.* ¶ 5. Stack did so despite knowing that the offering documents given to investors to solicit their investments expressly stated that every dollar raised in the private placement would be used to acquire gold mines, the SEC alleges. *Id.* Ultimately, the $5 million bond offering never occurred, and Preston never acquired any royalty streams. *Id.* ¶ 47.

On September 2, 2016, the SEC suspended trading in Preston's securities for ten business days because of questions about the adequacy and accuracy of available information about Preston in the marketplace. *Id.* ¶ 6. Preston ceased operations soon after. *Id.*

**B. Procedural Background**

On January 15, 2021, the SEC filed this civil enforcement action against Stack, alleging violations of Section 17(a) of the Securities Act (Claim I); Section 10(b) and Rule 10b-5 of the Exchange Act (Claim II); Section 5 of the Securities Act (Claim III); and aiding and abetting violations of these provisions (Claims IV-VI). *Id.* ¶¶ 115-35. The SEC seeks disgorgement; a civil penalty; and penny stock, officer and director, and securities-related legal services bars.[2]

Stack moved to dismiss the SEC's Complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b). Dkt. 18. This Court issued a Report and Recommendation to the District Court that the motion be denied. Dkt. 29. The District Court adopted the Report and Recommendation and denied Stack's motion to dismiss. Dkt. 32.

On September 15, 2022, the parties filed an Agreed Motion to Enter Agreed Partial Judgment as to Defendant Stack, notifying the Court that the parties had "reached an agreement to settle the claims related to the permanent injunctions for the statutes and rule that the Complaint

---

[2] The SEC filed a separate enforcement action in the District of Nevada against Marshall; his purported gold mining company, Westport Energy L.L.C.; and Intertech Solutions, Inc., his finance and management company for the alleged gold mining operations. *SEC v. Intertech Solutions, Inc.*, 2:18-CV-1566-APG (D. Nev. Aug. 20, 2018). After Marshall and his companies agreed to a Stipulated Consent Judgment, the District Court entered a Final Judgment against Marshall on August 22, 2018, ordering disgorgement of $7,438,602.63, a $184,767 civil penalty, and permanent penny stock and officer and director bars. *Id.* at Dkt. 5.

[allegations] were violated by the Defendant." Dkt. 46 at 1. Stack also "consented to the entry of an Agreed Partial Judgment, imposing certain injunctive relief, and deferring the issue of monetary relief and injunctive bars to be determined by the Court pending a motion by the Commission." *Id.*

The District Court entered the Consent Judgment permanently enjoining Stack from violating Sections 5 and 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act. Dkt. 47. The Consent Judgment also ordered "that Upon motion of the Commission, the Court shall determine whether it is appropriate to order" against Stack: (1) disgorgement of ill-gotten gains; (2) civil penalties; (3) officer and director injunctive bars; (4) a penny stock bar; and (5) a legal services Regulation D bar. *Id.* at 4. The Court also ordered that for the purposes of such a motion:

> (a) **Defendant will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint**; (b) Defendant may not challenge the validity of the Consent or this Final Judgment; (c) **solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court**; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.

*Id.* at 4-5 (emphasis added).

On October 7, 2022, the SEC filed this Motion for Financial Relief and Injunctive Bars asking the Court to bar Stack from (1) serving as an officer or director or any public company; (2) participating in any offering of a penny stock; and (3) providing professional legal services to any person or entity in connection with the offer or sale of securities. Dkt. 48 at 1. The SEC also seeks an order of disgorgement and a civil penalty. Stack opposes the Motion.

## II.     Stack's Motions for Leave

Stack seeks leave to file a Second Declaration in support of his Opposition to Plaintiff's Motion for Financial Relief and Injunctive Bars (Dkt. 59) and to file that exhibit under seal (Dkt. 60). Stack argues that he could not file the Second Declaration when he filed his Opposition Brief because of "unexpected staffing" issues and his "efforts to locate the documents attached to his Second Declaration." Dkt. 59 at 1. The SEC opposes the Motion for Leave, arguing that Stack has failed to show "excusable neglect" for the late filing. Dkt. 63 at 3.

Rule 6(b)(1)(B) provides that, "for good cause," a court may extend a deadline that has passed on a showing of "excusable neglect." Excusable neglect is an "elastic concept," and its determination is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392, 395 (1993). Factors relevant to the excusable neglect inquiry include: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential effect on the judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 161 n.8 (5th Cir. 2006).

The Court finds that each of the relevant factors supports a finding of excusable neglect. Accordingly, Defendant's Motion for Leave to File *Instanter* Supplemental Exhibit in Support of Opposition to Plaintiff's Motion for Financial Relief and Injunction Bars (Dkt. 59) is **GRANTED**. Stack's Motion for Leave to File the Supplemental Exhibit Under Seal (Dkt. 60) also is also **GRANTED**. Therefore, this Court **ORDERS** the Clerk to file Stack's Second Declaration and Attachments (Dkt. 60-1) *UNDER SEAL*.

### III.   SEC's Motion for Financial Relief and Injunction Bars

The SEC asks the Court to bar Stack from (1) serving as an officer or director of any public company; (2) participating in any offering of a penny stock; and (3) "providing professional legal services to any person or entity in connection with the offer or sale of securities pursuant to, or claiming an exemption under, Regulation D, or any other exemption from the registration provisions of the Securities Act." Dkt. 48 at 2. The SEC also seeks disgorgement in the amount of $333,110, plus prejudgment interest, and an equal civil penalty of $333,110. *Id.*

As stated, the parties stipulated in the Consent Judgment that the SEC's allegations are to be considered true for the purposes of deciding the SEC's Motion for Financial Relief and Injunction Bars, and that Stack is "precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint." Dkt. 47 at 4-5.

#### A.  Officer and Director Bar

First, the SEC asks the Court to bar Stack from acting as a director or officer of any company that has a class of securities registered under Section 12 of the Exchange Act or that is required to file reports under Section 15(d) of the Exchange Act. Under both the Securities Act and the Exchange Act, a court "may prohibit, conditionally or unconditionally, and permanently or for such period of time as it shall determine" a person who violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act "from acting as an officer or director" of any public company "if the person's conduct demonstrates unfitness to serve as an officer or director." 15 U.S.C. §§ 77t(e), 78u(d)(2).

A district court has "substantial discretion in deciding whether to impose a bar to employment in a public company." *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995). Courts generally consider the following factors when determining whether a defendant is "unfit" to serve as an officer or   director: "(1) the egregiousness of the underlying violation; (2) the

defendant's prior offenses; (3) the defendant's role when he engaged in the violations; (4) the degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that the misconduct will occur again." *SEC v. Farias*, No. SA-20-CV-00885-XR, 2022 WL 3031082, at *7 (W.D. Tex. Aug. 1, 2022) (citing *Patel*, 61 F.3d at 141, and *Steadman v. SEC*, 603 F.2d 1126, 1140 (5th Cir. 1979)). While these factors are useful in making the unfitness assessment, they are "are not exclusive, nor is each factor always relevant." *SEC v. Kahlon*, 873 F.3d 500, 507 (5th Cir. 2017) (citing *Patel*, 61 F.3d at 141).

### 1. Egregiousness

The SEC argues that Stack's conduct was egregious because he (1) "helped run a fraudulent scheme that bilked over $330,000 from investors with the promise of invested funds going towards a gold mining enterprise, but almost all of the funds went to Stack and his associates"; (2) "stood in as CEO of Preston to shield the presence of Marshall, a fraudster who used an email address with someone else's name because he did not want to put things in his own name"; and (3) signed off on press releases that fraudulently told investors Preston entered into royalty agreements when it had not, that an associated gold mine had been "fully permitted" and was in "the final stages of mine construction" when it was not, and that Preston would invest $250,000 "this season" in a project when Preston had only $100 in funds; and (4) "used a fraudulent PPM, which claimed that all investments would be used for a gold mining project and that hid the true principal (Marshall) to raise money that he largely misappropriated to himself, his wife, and that principal." Dkt. 48-1 at 11-12.

Courts in the Fifth Circuit have found such conduct to be egregious. *See Farias*, 2022 WL 3031082, at *6 (finding defendant's conduct egregious where defendant defrauded 88 investors out of more than $14 million, made repeated affirmative misrepresentations to investors in PPMs and other communications, failed to invest funds as promised, and misappropriated investment

funds for his own personal use); *SEC v. Gordon*, No. 3:21-CV-1642-B, 2021 WL 5086556, at *9 (N.D. Tex. Nov. 1, 2021) (finding defendants' conduct egregious where they misused investor funds, made multiple material misstatements to investors, and took actions resulting in a near total loss to investors); *SEC v. Provident Royalties, LLC*, No. 3:09-CV-01238-L, 2013 WL 5314354, at *6 (N.D. Tex. Sept. 23, 2013) (finding that defendant's conduct was egregious where he defrauded 7,700 investors by misrepresenting in PPMs how the investment funds would be used and how the investors would be paid dividends, intentionally failed to disclose his relationship with a parent company to investors, and transferred investor funds to his other companies and for personal use). The Court similarly finds Stack's conduct to be egregious.

Stack argues that his conduct did not rise to the level of egregiousness because he "was not substantively or knowingly involved in the alleged scheme of Marshall and others to defraud investors." Dkt. 56 at 16. Stack claims that he "believed that the solicitation and sales of securities pursuant to the PPM were exempt from the registration requirements," and that "he did not have knowledge of any unlawful solicitation or sales." *Id.* at 16-17. But for the purposes of this Motion, Stack has agreed to be bound by the allegations in the Complaint and is precluded from arguing that "he did not violate the federal securities laws as alleged in the Complaint." Dkt. 47 at 4. Accordingly, the SEC's allegations must be accepted as true. Based on the allegations in the Complaint, Stack's conduct was egregious enough to justify an officer and director bar.

### 2. Role in the Securities Fraud and Scienter

Scienter is "the mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976). "This requirement may also be satisfied by proof that the defendant acted with severe recklessness." *Provident Royalties*, 2013 WL 5314354, at *5.

Stack was Preston's CEO, President, Secretary, Treasurer, Director, and sole employee. In addition, Stack controlled Preston's bank account, personally misrepresenting information to investors and misappropriating investor funds. Stack is a securities attorney who either knew or recklessly disregarded that his conduct was illegal.

By entering into the Consent Judgment, Stack admitted that he

> directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has (i) employed a device, scheme, or artifice to defraud, (ii) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (iii) engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon other persons.

Dkt. 1 ¶ 119. Thus, Stack played a significant role in the securities fraud scheme and displayed a high degree of scienter. *See Farias*, 2022 WL 3031082, at *7 (finding that defendant's role in securities fraud scheme was significant and defendant acted with high degree of scienter where he was company's sole managing member, made repeated misrepresentations to investors, was responsible for the PPMs, website, and brochures, had control over company's bank accounts, and was responsible for the investor funds); *Provident Royalties*, 2013 WL 5314354, at *7 (finding that bar was necessary where defendant was an active participant of the fraud, admitted to being an officer and control person of the company, and directly benefitted from the scheme); *SEC v. Petros*, No. 3:10-CV-1178-M, 2013 WL 1091236, at *6 (N.D. Tex. Mar. 1, 2013) (holding that defendant had a central role in securities fraud violations and displayed high degree of scienter where he was "the sole director and officer" of the company and filed a registration containing false statements and fictitious and forged documents on behalf of the company), *R. & R. adopted*, 2013 WL 1092849 (N.D. Tex. Mar. 14, 2013).

### 3.  Economic Stake in the Violations

Although Stack claims that he had "only a small economic stake in Preston," the SEC alleges that Stack financially benefited from his role in the fraud by "spending more than $75,000 of investor money on personal expenses." Dkt. 1 ¶ 5. Stack is bound to these allegations. Accordingly, Stack financially benefited from his role in the securities fraud. *See Farias*, 2022 WL 3031082, at *7 (finding that defendant had significant economic stake in scheme where he spent investor funds on retail purchases, dining, and other personal expenses).

### 4.  Likelihood of Recurring Misconduct

In determining "the likelihood that misconduct will recur," courts look to whether the defendant (1) committed past securities law violations; (2) committed the securities violations with a "high degree of scienter"; and (3) has made any assurances against future violations. *Patel*, 61 F.3d at 142. Courts also look to the defendant's willingness to accept responsibility, the defendant's occupation, and the defendant's plans to work in a similar role. *Farias*, 2022 WL 3031082, at *7; *SEC v. Johnston*, 368 F. Supp. 3d 247, 253 (D. Mass. 2019), *aff'd*, 986 F.3d 63 (1st Cir. 2021); *SEC v. Jantzen*, No. 1:10-CV-740-JRN, 2012 WL 13032919, at *12 (W.D. Tex. Feb. 29, 2012).

While Stack does not have a history of securities law violations, this Court has found that he committed the instant violations with a high degree of scienter. Stack also has refused to accept full responsibility for his misconduct and continues to insist that he knew nothing about the scheme to defraud investors. Dkt. 56 at 15. His refusal to accept full responsibility in this case "demonstrates, at the very least, a lack of adequate assurance against future misconduct." *SEC v. Selden*, 632 F. Supp. 2d 91, 99 (D. Mass. 2009).

And Stack has made no assurances against future violations. Stack's occupation as a securities lawyer, as well as his willingness to step into the officer and director position of a

11

public company because "he was broke and needed a job," suggests that he likely would engage in such conduct again. Dkt. 1 ¶ 31. Stack has filed for bankruptcy protection at least five times, most recently on February 1, 2016. *Id.* ¶ 28. Stack also opposes the officer and director bar, which suggests that he intends to work again as an officer or director for another public company, providing opportunities to commit future violations. Weighing all these factors, the Court finds that there is likelihood of future misconduct. *See Jantzen*, 2012 WL 13032919, at *12 (finding likelihood of future misconduct where defendant, a licensed securities broker, "may work again for another public company" which would provide him with "ample opportunities for future violations and pose a continuing threat to the securities markets").

### 5.  Conclusion as to Officer and Director Bar

Based on the relevant factors, the Court finds that Stack should be barred for a period of time from serving as an officer or director of a public company.

### B.  Penny Stock Bar

Next, the SEC seeks a penny-stock bar against Stack prohibiting him from participating in any future offering of penny stock. Section 20(g)(1) of the Securities Act and Section 21(d)(6)(A) of the Exchange Act authorize a federal court to impose a penny stock bar in any enforcement action alleging violations of the federal securities laws "against any person participating in, or, at the time of the alleged misconduct who was participating in, an offering of penny stock." 15 U.S.C. §§ 78u(d)(6)(A), 77t(g)(1). In determining whether a penny stock bar is appropriate, courts consider the following factors, which are substantially similar to the factors for an officer and director bar: (1) egregiousness of the defendant's actions; (2) the isolated or recurrent nature of the infraction; (3) the degree of scienter involved; (4) the sincerity of the defendant's assurances against future violations; (5) the defendant's recognition of the wrongful nature of the conduct; and (6) the likelihood that the defendant's occupation will present

opportunities for future violations. *Kahlon*, 873 F.3d at 506; *SEC v. Blackburn*, No. CV 15-2451, 2020 WL 1702362, at *6 (E.D. La. Apr. 8, 2020).

As discussed above, factors one and three weigh against Stack. Under factor two, the Court must determine whether the defendant's conduct was isolated or recurrent. This factor "asks not whether Defendants engaged in recurrent lawful conduct, but whether Defendants' *violations* were recurrent or isolated." *SEC v. Voight*, No. H-15-2218, 2021 WL 5181062, at *17 (S.D. Tex. June 28, 2021). The SEC alleges that Stack engaged in a series of fraudulent misrepresentations over a period of some six months. This is sufficient to show that Stack engaged in recurring misconduct, not an isolated incident. *See SEC v. Myers*, No. 4:15-CV-00300, 2018 WL 11353113, at *9 (E.D. Tex. July 25, 2018) (finding that defendant's efforts in contacting and selling fraudulent investments to more than 60 investors over a 13-month period was recurrent and not isolated conduct); *SEC v. Sethi Petroleum, LLC*, No. 4:15-CV-00338, 2017 WL 3386047, at *4 (E.D. Tex. Aug. 7, 2017) (finding that defendant's actions in contacting 2,000 potential investors per day and capturing more than 90 investors from 28 states was recurrent conduct, "not a one-time mistake by [defendant]"), *aff'd*, 910 F.3d 198 (5th Cir. 2018).

Factors four and five also weigh against Stack. Stack continues to deny any wrongdoing in this case and blames all securities violations on Marshall. Dkt. 56 at 15-16. Despite agreeing to the allegations in the Complaint for purposes of this Motion, Stack still argues that he knew nothing about and played no active role in the purported fraud. *Id.* Accordingly, factors four and five weigh against Stack.

As to the last factor, Stack denies that his occupation as a lawyer will provide opportunities for future securities violations because he "has not practiced as an attorney in connection with penny stock transactions since 2016, and he presently has no plan or intention or doing so."

Dkt. 56 at 21. "The cessation of the violations does not preclude a finding of reasonable likelihood of future violations, as it does not establish a lack of opportunities for future violations." *SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 784 (5th Cir. 2017). In addition, Stack is a securities attorney who served as an officer and director of a penny stock issuer who used deceptive PPMs and press releases to defraud investors. As a securities attorney, he knew or at least recklessly disregarded that his conduct was illegal. Stack opposes the bar and has given no assurances that he will not commit future securities violations. The Court finds that his occupation as a lawyer will present opportunities for future violations. *See SEC v. Luna*, No. 2:10-CV-2166-PMP, 2014 WL 2960451, at *2 (D. Nev. June 27, 2014) ("Due to Luna's occupation as an attorney, and his argument that a legal services bar is inappropriate because it will negatively impact his ability to earn a livelihood, future violations are likely to occur.").

Based on all six relevant factors, the Court finds that a penny stock bar is warranted.

### C. Legal Services Bar

The SEC also seeks an order prohibiting Stack from providing professional legal services in connection with an offer or sale of securities pursuant to, or claiming, an exemption under Regulation D, or any other exemption from the registration provisions of the Securities Act. Section 20(b) of the Securities Act and Section 21(d) of the Exchange Act authorize the Commission to seek injunctive relief on a "proper showing" that a defendant "is engaged or is about to engage" in violations of the securities laws. *SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. 1981). In determining whether a defendant should be enjoined from providing legal services in connection with an offer or sale of securities under or claiming an exemption, courts consider the same factors as when considering a penny stock bar. *Luna*, 2014 WL 2960451, at *2. As discussed above, all these factors weigh against Stack and a legal services bar is warranted in this case. *See id.* (enjoining attorney-defendant). While Stack claims he has not

practiced law related to a penny stock transaction since 2016, he could resume these activities absent an injunction.

### D.  Permanent or Temporary Bars

The SEC argues that the officer and director, penny stock, and legal services bars should be permanent. Stack contends that permanent bars are not warranted because he is a first-time offender and his conduct was insufficiently egregious. Stack argues that: "Any bar should be limited in time to no more than the six years he has already abstained from the very conduct for which the SEC seeks bar and the judgment should give him credit for this time." Dkt. 56 at 20.

A district court is afforded substantial discretion in deciding whether to impose a bar to employment in a public company. *Patel*, 61 F.3d at 141. "[B]efore imposing a permanent bar, the court should consider whether a conditional bar (e.g., a bar limited to a particular industry) and/or a bar limited in time (e.g., a bar of five years) might be sufficient, especially where there is no prior history of unfitness." *Id.* at 142.

Because Slack does not have a history of securities violations and his violations were limited to a period of months rather than years, the Court finds that a permanent bar would be excessive and a five-year bar appropriate. *See id.*; *SEC v. All. Transcription Servs., Inc.*, No. CV-08-1464-PHX, 2009 WL 5128565, at *9 (D. Ariz. Dec. 18, 2009) (finding that five-year ban was appropriate against first-time offender); *SEC v. Chester Holdings, Ltd.*, 41 F. Supp. 2d 505, 530 (D.N.J. 1999) (imposing five-year ban on first-time offender because "the likelihood of future violations [was] not as clear"). "Such a penalty will strike an appropriate balance between protecting investors and avoiding an unduly harsh permanent ban from any future employment in the securities industry." *SEC v. Johnston*, 368 F. Supp. 3d 247, 253 (D. Mass. 2019), *aff'd*, 986 F.3d 63 (1st Cir. 2021).

### E.  Disgorgement

Disgorgement "is an equitable remedy meant to prevent the wrongdoer from enriching himself by his wrongs." *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 413 (5th Cir. 2007). "District courts ordinarily have 'broad discretion' in determining a disgorgement award." *SEC v. World Tree Fin., L.L.C.*, 43 F.4th 448, 466 (5th Cir. 2022) (quoting *SEC v. Huffman*, 996 F.2d 800, 803 (5th Cir. 1993)). In *SEC v. Liu*, 140 S. Ct. 1936, 1939 (2020), the Supreme Court clarified that an order of disgorgement cannot exceed the defendant's "net profits" and must "be awarded for victims." Courts "must deduct legitimate expenses before ordering disgorgement under § 78u(d)(5)" to "ensure that any disgorgement award falls within the limits of equity practice while preventing defendants from profiting from their own wrong." *Id.* at 1950.

The SEC bears the initial burden of persuasion that its disgorgement figure reasonably approximates the amount of unjust enrichment. *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010). Once the SEC establishes a reasonable approximation of a defendant's actual profits, the burden shifts to the defendant to show that the disgorgement figure was not a reasonable approximation. *Id.*

The SEC seeks disgorgement in the amount of $333,110 plus prejudgment interest. The SEC alleges that Stack raised $333,110 from more than fifty-five investors in the fraudulent securities scheme, keeping $75,000 for himself for personal expenses and giving Marshall the rest. The SEC argues that Stack should be held accountable for the full amount he raised in the fraudulent offering, not just the $75,000 he kept. Dkt. 48-1 at 21 (citing Dkt. 48-11 (showing Stack's bank withdrawals)). The SEC emphasizes that Stack did not use the remaining $225,000 on legitimate business expenses, but sent $16,850 of that amount to his wife, Melissa Kelly, and the rest to "his confederate Marshall." *Id.* (citing Dkts. 48-12, 48-13 (showing Stack's transfers to Kelly and Marshall)). The SEC argues that Stack should be held jointly and severally liable for the full

amount of the money raised in the offering because Stack and Marshall were partners in the fraudulent scheme and Stack raised the money on behalf of himself, Marshall, and Preston.

Because the SEC has established a reasonable approximation of Stack's actual profits, the burden shifts to Stack to show that the disgorgement figure was not a reasonable approximation. *Voight*, 2021 WL 5181062, at \*10. Stack first argues that the SEC's request to hold him jointly and severally liable for the full $333,110 "is flatly contrary to *Liu.*" Dkt. 56. Stack is mistaken. In *Liu*, the Court cautioned that imposing joint and several disgorgement liability on a wrongdoer for benefits accrued to his affiliates "could transform any equitable profits-focused remedy into a penalty." 140 S. Ct. at 1949. But the Court also explained that: "The common law did, however, permit liability for partners engaged in concerted wrongdoing. The historic profits remedy thus allows some flexibility to impose collective liability." *Id.* (citation omitted). Therefore, as the Fifth Circuit recently clarified, "*Liu* allows for [joint and several] liability where 'partners engaged in concerted wrongdoing.'" *World Tree Fin.*, 43 F.4th at 467 n.15; *see also SEC v. United Energy Partners, Inc.*, 88 F. App'x 744, 747 (5th Cir. 2004) (stating that "joint and several liability is appropriate in securities cases where, as here, individuals collaborate or have close relationships in engaging in illegal conduct").

The SEC alleges that Stack and Marshall were partners engaged in a concerted fraudulent scheme to dupe investors. Stack ran Preston out of his home, controlled its bank accounts, and was Preston's CEO, President, Secretary, Director, and Treasurer. Accordingly, under *Liu*, Stack should be held jointly liable for the full amount of money raised in the scheme on behalf of Preston minus any legitimate business expenses. *See World Tree Fin.*, 43 F.4th at 466-67 (affirming joint and severally liable disgorgement amount against husband and wife who jointly executed fraudulent scheme); *SEC v. Whittemore*, 659 F.3d 1, 10 (D.C. Cir. 2011) (approving

joint and several disgorgement liability where consented-to allegations in the complaint made clear that defendants acted in concert in executing a single fraudulent scheme).

Stack further argues that certain legitimate business expenses should be deducted from the $333,110: (1) $30,000 as compensation for his role as President and CEO of Preston; (2) $17,800 as payment for his wife's administrative services for Preston; and (3) $3,000 for a consultant to set up a company website. Other than his conclusory allegations, however, Stack fails to point to any evidence that these amounts were legitimate business expenses. *See Voight*, 2021 WL 5181062, at *10 ("To the extent [defendant] attempts to characterize these fraudulent transactions as legitimate venture capital investments, his testimony is disregarded because it is at complete variance from the facts that must be accepted as true."). Moreover, under the Consent Judgment, Stack is bound to the allegations in the Complaint, which states that he "further defrauded investors by misappropriating the proceeds of the offering, spending more than $75,000 of investor money on personal expenses and transferring more than $225,000 to Marshall." Dkt. 1¶ 5. And, because all the offerings described in the Complaint were unlawful, all the profits of those offerings are subject to disgorgement. *See Liu*, 140 S. Ct. at 1950 (recognizing that deductions of expenses are not required "when the 'entire profit of a business or undertaking' results from the wrongdoing"); *Voight*, 2021 WL 5181062, at *10 ("Because all of the promissory note offerings described in the Complaint were unlawful, all of the profits of those offerings are subject to disgorgement."); *SEC v. Faulkner*, No. 3:16-CV-1735-D, 2021 WL 75551, at *7 (N.D. Tex. Jan. 8, 2021) ("[B]ecause all of the securities that [defendant] sold were in violation of the securities laws, the court finds that all of the compensation [defendant] received for his role in the sale of these securities is subject to disgorgement."), *aff'd*, 42 F.4th

316 (5th Cir. 2022). Stack has failed to sustain his burden to show that $333,110 is not a reasonable approximation for disgorgement.

It is well-settled that courts may add prejudgment interest to a defendant's disgorgement amount "to prevent him from benefiting from the use of ill-gotten gains interest free." *Faulkner*, 2021 WL 75551, at *9. Accordingly, the SEC is entitled to prejudgment interest on the disgorgement amount. *See id.* (ordering defendants "to pay prejudgment interest because these defendants enjoyed the benefits of their victims' money, thereby offending basic principles of justice and equity").

The interest rate used to calculate prejudgment interest is the rate published by the IRS under 26 U.S.C. 6621(a)(2) to calculate interest on tax underpayments. *Id.* at 10. That rate of interest "reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from [Stack's] fraud." *Id.* (quoting *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996)).

Using the interest provision of 26 U.S.C. § 6621(a)(2), the SEC calculated prejudgment interest accrued from September 2, 2016, the last day of funds raised through the fraudulent offering, through October 7, 2022, the day it filed this Motion, to be $95,073. Although the amount will require updating when the District Court rules on this Report and Recommendation, the Court finds that the SEC is entitled to prejudgment interest of at least $95,073.

**F.  Civil Penalty**

Finally, the SEC proposes that the Court order a civil penalty of $333,110 against Stack. Stack opposes any civil penalty.

The Securities Act and the Exchange Act[3] authorize courts to impose civil penalties that "are designed to punish individual violators and deter future violations of the securities laws, which is necessary because without civil penalties, the only financial risk to violators is the forfeiture of their ill-gotten gains." *Voight*, 2021 WL 5181062, at *14 (cleaned up). Both statutes set out a three-tier penalty structure that provides increasing maximum penalty amounts based on the severity of the violations. *Id.* First-tier penalties may be imposed for any violation. 15 U.S.C. §§ 77t(d), 78u(d)(3). Second-tier penalties are warranted when violations involve "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." *Id.* Third-tier penalties are authorized where violations that involve "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" also "directly or indirectly result[ ] in substantial losses or create[ ] a significant risk of substantial losses to other persons." *Id.* The statutes provide that the SEC need only make "a proper showing" that a violation has occurred and a penalty is warranted. 15 U.S.C. § 77t(d)(1).

Although the tier determines the maximum penalty amount, the actual amount imposed is left to the court's discretion. *Faulkner*, 2021 WL 75551, at *10. Courts have identified five factors useful in determining an appropriate penalty: (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced because of the defendant's demonstrated current and future financial condition. *Voight*, 2021 WL 5181062, at *15. Because the Court has determined that factors one through four weigh against Stack, only the fifth factor is addressed below.

---

[3] 15 U.S.C. §§ 77t(d), 78u(d)(3).

The SEC proposes that the Court order Stack to pay the maximum third-tier penalty applicable here, the amount of the gross pecuniary gain to the defendant: $333,110. *See* 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3), and 17 C.F.R. § 201.1001. The SEC argues that such a penalty is warranted here because

> Stack was the only person who legally controlled Preston and ran it out of his home during the relevant time. Stack, along with Marshall and others, used Preston to defraud scores of investors of $333,110 in investment funds. As a securities attorney, Stack knew that his conduct was wrongful and improper, as he confessed to Marshall that his conduct was similar to clients who had been criminally convicted.

Dkt. 48-1 at 24.

Stack argues that the Court should not impose a civil penalty against him, or at most only a minimal penalty, because he has no assets and cannot afford to pay any penalty. Dkt. 56 at 24. Stack claims that he "owes far more than he has in child support and has no regular income at this time to support his family or himself." *Id.* In support, Stack submits: (1) a Declaration stating that he "would be unable to pay any material amount of disgorgement of civil penalties in this case," Dkt. 60-1 at 2; (1) his tax returns from 2020 and 2021 showing an adjusted gross income of less than $14,000; (2) a bank statement showing a negative balance of $77.78 as of September 26, 2022; and a Texas Attorney General Child Support bill showing that he owes more than $32,000 in back child support. *Id.* at 3-15. Stack also states in his Declaration that he has been renovating a house for the past year and a half and plans "to sell the home to have some modest amount of money to catch up on outstanding bills." *Id.* at 1. Notably, Stack fails to state how much the house is worth or whether he owns any other property. Thus, he has failed to carry his burden to establish an inability to pay by a preponderance of the evidence. *SEC v. Sample*, No. 3:14-CV-1218-B, 2017 WL 5569873, at *4 (N.D. Tex. Nov. 20, 2017) (stating that a defendant must establish inability to pay by a preponderance of the evidence).

Even if Stack had shown by a preponderance of the evidence that he does not have the financial resources to pay a civil penalty, an inability to pay is only one factor to be considered in imposing a penalty and "should not be deemed categorically and uniformly the determinative one in the analysis." *SEC v. GenAudio Inc.*, 32 F.4th 902, 955 (10th Cir. 2022); *see also SEC v. Warren*, 534 F.3d 1368, 1370 (11th Cir. 2008) (noting that defendant "cites no decisional law stating that the securities laws impliedly prohibit a district court from imposing penalties or disgorgement in excess of a violator's ability to pay, and we have located none. At most, ability to pay is one factor to be considered in imposing a penalty."). Because all the other factors weigh against Stack, the Court finds that a third-tier penalty is warranted. *See GenAudio Inc.*, 32 F.4th at 955 (affirming civil penalty against defendant where his purported inability to pay did not "tilt the decisional balance against the imposition of a penalty"); *Warren*, 534 F.3d at 1370 (affirming civil penalty against defendant who allegedly could not pay penalty because "a civil penalty was warranted by [defendant's] concededly fraudulent conduct"). In support of an action seeking imposition of a civil penalty, the SEC need only make "a proper showing" that a violation has occurred and a penalty is warranted. 15 U.S.C. § 77t(d)(1). The SEC has done so.

### IV.   Order

Th Court **HEREBY GRANTS** Defendant's Motion for Leave to File Supplemental Exhibit in Support of Opposition to Plaintiff's Motion for Financial Relief and Injunction Bars (Dkt. 59) and Defendant's Motion to File Exhibit Under Seal (Dkt. 60). The Court further **ORDERS** the Clerk to file Stack's Second Declaration and Attachments (Dkt. 60-1) ***UNDER SEAL***.

## V.    Recommendation

The undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART** Plaintiff Securities and Exchange Commission's Motion for Financial Relief and Injunction Bars (Dkt. 48) and enter a Final Judgment:

(1) ordering Defendant Stack to pay disgorgement in the amount of $333,110, plus prejudgment interest to be determined by the District Court;

(2) ordering Defendant Stack to pay a civil penalty of $333,110; and

(3) barring Defendant William Andrew Stack for **five years** from:

    (a) serving as an officer or director of any company that has a class of securities registered under Section 12 of the Exchange Act, 15 U.S.C. § 78l, or that is required to file reports under Section 15(d) of the Exchange Act, 15 U.S.C. § 78o(d), pursuant to Section 20(e) of the Securities Act, 15 U.S.C. § 77t(e), and Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2);

    (b) participating in any offering of a penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, under Section 21(d)(6) of the Exchange Act, 15 U.S.C. § 78u(d)(6); and

    (c) providing professional legal services to any person or entity in connection with the offer or sale of securities pursuant to, or claiming an exemption under, Regulation D, or any other exemption from the registration provisions of the Securities Act of 1933.

**IT IS FURTHER ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Lee Yeakel.

## VI.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report

within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on January 31, 2023.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE